Antoine B. RINIERI, Appellee,

v.

NEWS SYNDICATE CO., Inc., Appellant.

NEWS SYNDICATE CO., Inc., Petitioner,

v.

Antoine B. RINIERI, Respondent,

and

Honorable Sidney Sugarman, Chief Judge, United States District Court for the Southern District of New York, Nominal Respondent.

No. 98, Dockets 31547, 31578.

United States Court of Appeals Second Circuit.

Argued Oct. 24, 1967.

Decided Nov. 15, 1967.

C. Joseph Hallinan, Jr., New York City (Joy & Hallinan, New York City, of counsel), for appellee.

Richard J. Barnes, New York City (Townley, Updike, Carter & Rodgers, James W. Rodgers, Anson M. Keller, New York City, of counsel), for appellant.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The question we are called upon to decide is whether Antoine B. Rinieri should have been permitted to have his libel action against the News Syndicate Co., Inc. [News] reinstated almost two and a half years after it was ordered dismissed for lack of prosecution.[1] Judge Sugarman after first refusing to set aside the order of dismissal, on reargument granted Rinieri's application

---

1. While the order was entered, a "judgment" was never filed in the court below. However, it is clear that Judge McGohey's order, which dismissed the action, was a "final" order. Since Fed.R. Civ.P. 60(b) specifically refers to both final judgments and orders the title given to the document entered is of no importance in this case.

and ordered the cause restored to the District Court's calendar. We reverse.

■ A summary recital of essential dates in the chronicle of this case is in order. The allegedly defamatory article on which the suit is grounded appeared in the New York Daily News on June 20, 1962.[2] Rinieri's complaint was filed on June 7, 1963—two weeks before the one-year statute of limitations expired.[3] On June 24, 1963, the News served its notice to take Rinieri's deposition but, upon stipulation, the examination was postponed twice and the News' time to answer extended. Rinieri then moved for an order pursuant to Rule 30(b) of the Federal Rules of Civil Procedure directing that his deposition be taken in France; this motion was denied on November 1, 1963. In due time, on June 12, 1964, the case appeared on the District Court's civil review calendar. This calendar procedure is a device utilized by the district judges to spur counsel to move forward to trial with their cases. Judge McGohey directed that the action would be dismissed if a note of issue (placing the case on the trial calendar) was not filed within 90 days. The allotted time elapsed without compliance. Accordingly, on September 24, 1964, Judge McGohey dismissed the action, without prejudice, for lack of prosecution.

Approximately two and a half years later, on February 9, 1967, Rinieri served a notice of motion "for an order, restoring this case to the docket." As we have indicated, Judge Sugarman first denied relief on May 2, 1967, but reversed himself on May 29, 1967, and directed that the order of dismissal be set aside and the case restored to the calendar. His brief order recites no authority for his action. The defendant filed a timely notice of appeal and, in an abundance of caution, petitioned for a writ of mandamus.

## I.

In order to deal with Rinieri's argument that the relief granted by Judge Sugarman was justified, it is necessary that we set forth the background in some detail. For purposes of this decision it is sufficient that we assume the facts as alleged by appellee.[4] Rinieri claimed that he was carrying approximately $247,500 in cash when he arrived in New York by airplane from France on June 12, 1962. The money, which had consecutive serial numbers, was, he insisted, the savings and profits he had accumulated over a period of years from buying and selling art. The purpose of his visit to the United States, he said, was to attempt to purchase a Van Gogh from an undisclosed principal. The alleged seller, however, failed to keep a prearranged appointment in New York City so Rinieri left the city the day after his arrival. He then visited Charlotte and Asheville, North Carolina, and, on June 18, 1962, flew to Chicago and boarded a plane bound for Zurich, Switzerland, via Montreal, Canada. Rinieri never reached Montreal; for reasons that are not clear, the plane landed instead in New York City. Federal Customs agents were present to meet the plane. They seized the $247,500 and served Rinieri with a subpoena to appear before a grand jury the following day.

The government, as expected, had a version for the existence of this enormous amount of cash which differed from Rinieri's. Its account was that he "was picking up money from underground dope contacts in all the cities in

2. The article gave an account of the reasons given by the government for detaining Rinieri, see infra part I. The tone of the article is adequately conveyed by its headline: Called Dope Bagman, Jailed on 274G Cash. A number of other newspapers also carried accounts of Rinieri's detention; the libel actions that were filed against these other papers are not before us.

3. New York C.P.L.R. § 215(3). New York law governs since jurisdiction was predicated on diversity of citizenship.

4. The facts are disclosed in affidavits filed in support of the motion before Judge Sugarman. See also the discussion of facts in another matter concerning appellee, Rinieri v. Scanlon, 254 F.Supp. 469 (S.D.N.Y.1966).

which he stopped." In any event, Rinieri refused to disclose to the grand jury the name of the individual from whom he was to make the purchase, or to identify the individual in Switzerland with whom this substantial nest egg had been stored. As a result, he was convicted of civil contempt and his six-month sentence was upheld by this court. United States v. Rinieri, 308 F.2d 24, cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962). On December 27, 1962, following his prison term, he was deported.[5]

But, Rinieri's difficulties with the government were not over. On June 21, 1962, the Internal Revenue Service levied a jeopardy assessment in the amount of $247,820 against Rinieri and his assets.[6] The Service maintained that the money had been earned in this country. Following his deportation, however, Rinieri commenced a successful action to recover the money seized, Rinieri v. Scanlon, 254 F.Supp. 469 (S.D.N.Y. 1966), and the money was returned to him on November 16, 1966.[7]

Before Judge Sugarman, Rinieri's basic contention for setting aside the order of dismissal was that the government's seizure of his assets rendered him financially unable to prosecute his suit. In this court, he has embellished this argument and has claimed that the notoriety which surrounded him because of the newspaper articles portraying him as an alleged *international trafficker in narcotics* alienated his friends—presumably helpful witnesses—and made it impossible for him to proceed effectively with his action. We will examine these contentions after determining whether we have jurisdiction to hear this appeal.

## II.

Rinieri first moved to dismiss the appeal claiming that Judge Sugarman's order was not appealable. He argued that the order of September 24, 1964, dismissing the complaint, was not a "final" order since it was "without prejudice." He reasoned from this that the action could have been reinstated at any time and without recourse to Rule 60(b) which narrowly limits the relief available from a final order.[8] At oral argument, however, appellee withdrew this ground for dismissal and we believe with good reason. Although a dismissal without prejudice permits a new action (assuming the statute of limitations has not run) without regard to *res judicata* principles, the order of dismissal, nevertheless, is a final order from which an appeal lies. See Zadig v. Aetna Ins. Co., 42 F.2d 142 (2d Cir. 1930). Cf. Blair v. Cleveland Twist Drill Co., 197 F.2d 842 (7th Cir. 1942); 6 Moore, Federal Practice ¶ 54.12[1].

It follows, therefore, that relief setting aside the order of dismissal and restoring the case to the docket could only have been granted pursuant to the authority of Rule 60(b). And, the law is settled that if the District Court assumes jurisdiction and power to act under that rule where neither exists, an appeal will lie from its order vacating the original order. See Cavalliotis v. Saloman, 357 F.2d 157 (2d Cir. 1966); Radack v. Norwegian America Line

---

5. Rinieri was never indicted for narcotics or customs violations. He applied for reentry into the United States for the purpose of prosecuting his civil actions on July 30, 1963; permission was refused.

6. See 26 U.S.C. § 6851.

7. $10,000 had previously been returned pursuant to an order of Justice Harlan, dated October 25, 1962, to provide Rinieri with the funds to make bail while his petition for certiorari on the contempt conviction was pending.

8. Fed.R.Civ.P. 60(b) provides, in relevant part:
   > On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Agency, Inc., 318 F.2d 538 (2d Cir. 1963) (citing cases). See also Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013 (1886).[9] We recognize, of course, that trial judges must be allowed to exercise their sound discretion in granting or denying relief from a final judgment. Cf. Cavalliotis v. Saloman, supra. But, in vacating the order of dismissal Judge Sugarman deprived the News of the benefit of Judge McGohey's order. And, if he acted without any basis in law, disregarding the limitations placed upon the power to vacate provided in the provisions of Rule 60(b), he lacked jurisdiction to act and this order is appealable. See Radack v. Norwegian America Line Agency, Inc., supra, 318 F.2d at 543, n. 5. Cf. Phillips v. Negley, supra.[10] Thus, the "question of our jurisdiction [to act on appeal] is necessarily included in the question of the validity of the proceeding [below] * * *." 117 U.S. at 672, 6 S.Ct. at 903. We therefore return to a consideration of the validity of the proceeding below.

### III.

As noted, by the time Rinieri moved to reinstate his action, the order which he sought to vacate was more than two years old. The language of Rule 60(b) makes it immediately apparent that Judge Sugarman could not have acted on the ground that the order of September 24, 1964 was the result of "mistake, inadvertence, surprise or excusable neglect", Rule 60(b) (1), for that provision carries a one-year limitation period. Appellee, however, in an attempt to escape the time bar applicable to Rule 60(b) (1) now seeks to bring himself within the dragnet provision of 60(b) (6)—"any other reason justifying relief"—no specific time requirements being provided under this subdivision for an application to vacate.

■ But Rule 60(b) (6) is not a *carte blanche* to cast adrift from fixed moorings and time limitations guided only by the necessarily variant consciences of different judges. It is not to be used as a substitute for appeal when appeal would have been proper, 7 Moore, Federal Practice ¶60.27(i) (2d ed. 1966), and may be relied upon only in "exceptional circumstances." Ackermann v. United States, 340 U.S. 193, 202, 71 S.Ct. 209, 94 L.Ed. 1371 (1950); Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed.2d 266 (1949). Thus, it is settled that 60(b) (1) and 60(b) (6) are not *pari passu* and are mutually exclusive, and that the latter section cannot be used to break out from the rigid time restriction of the former. Wright, Federal Courts § 98 (1963); 7 Moore, Federal Practice ¶60.27[1] (2d ed. 1966). While it is clear to us that Rinieri's showing would not have warranted relief under 60(b) (1), we need not labor the point for we are convinced that Rinieri has failed to bring himself within the "extremely meagre" scope, as Judge L. Hand referred to it, of Rule 60(b) (6). United States v. Karahalias, 205 F.2d 331, 333 (2d Cir. 1953). And thus we are not concerned with a mere abuse of discretion since the factors necessary to bring Rinieri within 60(b) (6) and the exercise of any discretion are absent.

9. In *Radack* we characterized the order granting relief under Rule 60(b) as interlocutory, although appealable. Phillips v. Negley would seem to indicate that the order is final. 117 U.S. at 671, 672, 6 S.Ct. 901, 29 L.Ed. 1013. In the last analysis little is at stake beyond a label; the significant point is that the order is appealable.

10. We recognize that the authority we are following has been criticized and it has been suggested that the proper remedy in cases such as this is through the medium of a prerogative writ. See 6A Moore, Federal Practice ¶ 59.15[1] (2d ed. 1966); id. at ¶ 60.30[3]. But Phillips v. Negley has never been overruled and we applied it in *Radack*. It is true that in International Products Corp. v. Koons, 2 Cir., 325 F.2d 403 (1963), we stated that "The normal remedy for action taken in excess of jurisdiction is mandamus." 325 F.2d at 407. We note, however, that *Koons* involved an order purportedly made under Fed.R.Civ.P. 30 (b) which did not deprive a party of the benefit of a final order of dismissal.

We are of the view that there is a complete absence of those exceptional circumstances that would justify relief. Throughout his conflict with the government and from the moment he instituted his libel action Rinieri was represented by the same counsel. This is clearly not a case, therefore, where a party suffered a dismissal or lost important rights because he did not have a lawyer or lacked legal advice. Compare Ackermann v. United States, supra (relief denied under Rule 60(b) (6); petitioner represented by counsel), with Klapprott v. United States, supra (relief granted; petitioner without the effective assistance of counsel).

■■■■ Rinieri tells us, however, that he was unable to proceed with his suit against the News because the government seized all his assets and that this in some way affected his prosecution of this litigation. But his alleged inability to enforce effectively his rights is negated by the fact that after his money was seized he was still able to hotly contest his contempt conviction in this court represented by counsel of his own choice and to apply for certiorari in the Supreme Court, and also successfully prosecuted his suit to have his money refunded. Moreover, impecuniosity, in itself, does not constitute an "extraordinary" circumstance justifying relief. Loucke v. United States, 21 F.R.D. 305 (S.D. N.Y.1957). Cf. Ackermann v. United States, supra. If a party lacks funds it is not given to him to decide *ex parte* that he is justified in not prosecuting his suit and is thus free to ignore the rules of the courts. He follows a risky course when he takes this responsibility in his own hands. Indeed, there are well recognized means for the protection of one finding himself in such a position without at the same time prejudicing the rights of opposing parties. Rinieri, for example, could have moved to proceed *in forma pauperis* (if that was appropriate). See Ackermann v. United States, supra, 340 U.S. at 199, 71 S.Ct. 209, 94 L.Ed. 1371; compare 2d Cir. R. 15A.

But, he could not stop or start the litigation based on his own rationalizations and in complete disregard of rules of court or of such rights of his opponent which became fixed on the entry of an order of dismissal.

Similarly, there is little merit to Rinieri's claim that the notoriety which allegedly ensued as a result of the Daily News article is a sufficient reason for relief from the order of dismissal. Here, too, it is significant that Rinieri was able to pursue his other litigation. More importantly, however, Rinieri misconstrues the thrust of Rule 60(b). Assuming *arguendo* that Rinieri's notoriety prevented him from effectively prosecuting his action, there are no circumstances alleged which serve to explain why he waited more than two years before making his difficulties known to a judge. The proper course for him and his counsel to have followed was to have presented these alleged reasons for not pursuing the litigation to Judge McGohey, or another district court judge, or to this court on an appeal from Judge McGohey's order of dismissal. As his brief makes clear, Rinieri made a calculated decision not to avail himself of these procedures and to take the law in his own hands. Under these circumstances it would be unfair, indeed unjust, to permit him to choose his own time to bring the News back into court to face a stale charge of defamation years after it had every reason to believe the action had been terminated. In sum, appellant "cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong * * *. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." Ackermann v. United States, supra, 340 U.S. at 198, 71 S.Ct. at 211.

We conclude therefore that Judge Sugarman had no basis in law under Rule 60(b) to vacate the judgment of September 24, 1964.

Reversed; petition for mandamus dismissed as moot.