Jack W. KELLEY et al., Appellants,

v.

BANK BUILDING AND EQUIPMENT CORPORATION OF AMERICA, a corporation, and Advance Glass Company, a corporation, Appellees.

No. 316–70.

United States Court of Appeals,
Tenth Circuit.

Jan. 7, 1972.

---

Thomas R. Brett, of Jones, Givens, Brett, Gotcher & Doyle, Tulsa, Okl., for appellants.

Robert S. Rizley, Tulsa, Okl. (Walter M. Clark, Justin C. Cordonnier, and Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel, with him on the brief), for appellee Bank Building and Equipment Corp. of America.

Harry M. Crowe, Jr., of Crowe & Thieman, Tulsa, Okl., for appellee Advance Glass Co.

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

SETH, Circuit Judge (reassigned to SETH, Circuit Judge, for opinion).

This diversity suit was brought by the owners of the Fourth National Bank Building in Tulsa, Oklahoma, against Bank Building and Equipment Corporation of America, a general contractor that constructed the building for the owners. Commercial Union Insurance Company wrote the performance bond for Bank Building and was included as an additional party defendant. Advance Glass Company, a subcontractor impleaded by Bank Building, counterclaimed against the plaintiffs and defendant Bank Building. Plaintiffs assert several defects in the completed building were caused by the contractor's negligence.

As between the owner-plaintiffs and the defendant Bank Building, judgment was rendered in favor of the defendant. In the third party action, judgment was initially rendered in favor of the third party defendant Advance Glass against both the owner-plaintiffs and the defendant Bank Building, but was subsequently amended so that Bank Building was entitled to reimbursement from plaintiffs for money paid to Advance Glass in satisfaction of the third party claim. Trial was to the court, and plaintiffs appeal both judgments.

On August 13, 1965, plaintiffs, reserving the right to negotiate various subcontracts, entered into a contract for the construction of the Fourth National Bank Building with defendant Bank Building (hereinafter the contractor). On December 28, 1967, the parties executed a termination agreement, concluding their obligations under the original contract, reserving certain rights, and stipulating that the building was formally accepted by the plaintiffs on September 1, 1967.

The action was instituted within the period referred to in the original contract, and also under a termination agreement. Plaintiffs alleged four major defects in workmanship and seek to recover expenses for remedial work necessitated by the contractor's alleged faulty construction.

Two of the building owners were also the architects who designed the building and supervised its construction. These owner-architects originally designed a thirty-one-story building. The outside of the building was to be covered with glass and marble. Concrete structural columns of the exterior were to be faced with marble sheets three-quarters of an inch thick and secured to the columns by metal fasteners. According to the original plans the vertical surfaces of the concrete columns were allowed a three-quarter-inch tolerance or variation from plumb, which could have been trued by the devices used to attach the marble.

The plans, however, were changed during construction and it was decided to use a seven-sixteenths-inch thick marble to be attached directly to the columns by an adhesive. Because some of the columns were out of plumb as permitted under the original plans, and because the change in design required them to be true, the cement columns had to be built up and straightened by the addition of material to their surfaces where the thinner marble was to be bonded.

It was agreed between the plaintiffs and defendant contractor that the columns would be built out and straightened by applying metal lath and cement plaster. The contractor engaged Mr. Harry True to perform the necessary corrective work, and his work was done as specified. Mr. Richard Klein was engaged to do the marble setting, though it is disputed whether he was in fact in the employ of the contractor or the owner-architects. Two other marble-setters were also on the payroll of the contractor but working under Mr. Klein.

While Mr. True was to have trued all the columns, and so prepared them for Mr. Klein, Mr. Klein proceeded independently as well, and in an effort to expedite the marble setting, he plastered and filled out some columns with a soft plaster admittedly incapable of providing a suitable surface upon which to bond the marble to the column. Shortly after the completion of the building, the marble that had been bonded to the columns over the soft plaster began to loosen, crack, and come off. It is undisputed that the marble placed over Mr. True's cement plastering has remained secure and troublefree. The damages sought in this regard are for remedial work necessitated by the work of Mr. Klein and the marble-setters.

■ The plaintiffs owner-architects alleged that it was the responsibility of the contractor to oversee the corrective work on the columns and the marble setting; that the marble-setters were on the payroll of the contractor; that the contractor scheduled their work, and that the contractor is accordingly liable under the terms of the termination agreement. The defendant contractor maintains that the owner-architects did their own marble work, thus independently altering the original contract and assuming the responsibilities attendant to the marble setting. In its findings of fact and conclusions of law, the trial court found that the owner-architects assumed the responsibility for supervising the marble work; that the work performed by persons under the supervision of the owner-architects was not the responsibility of the defendant contractor.

It is apparent from the testimony that Klein had been an employee of the owner-architects and was concurrently on other of their jobs. The marble setting was not subcontracted through the defendant contractor, but rather was negotiated by Mr. Kelley, one of the owner-architects. He had also negotiated a bonus agreement with Mr. Klein, payable if the work was completed expeditiously. The record shows that Mr. Klein traveled to Indiana during the course of the marble setting in order to do some work for the owner-architects on another job. Mr. Klein was also paid out of the building account for work he had done on another owner-architect building. Mr. Bill Smith, a superintendent for the contractor, testified that he had not supervised the marble installation, that as far as he knew the supervision was being conducted by the owner-architects, and contrary to trade custom, he was never approached by the owner-architects who instead made frequent on-the-job visits to Mr. Klein. While it is true that the marble-setters were on the contractor's payroll, this was apparently directed by Mr. Kelley in order to facilitate processing disbursements from the construction loan. The record clearly supports the findings of the trial court as to the supervision of this work and its conclusions were correct. Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963); Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037 (10th Cir. 1970).

The plaintiffs' second claim is that the glass portions of the exterior build-

ing with its supporting metal structure were improperly installed by the contractor, and by its subcontractor, Advance Glass Company, the third party defendant. This glass and metal portion of the exterior is called a curtain wall. It is alleged that the improper installation has resulted in water leakage, broken glass, and damage to the interior of the building, requiring remedial work costing approximately $45,000. The contractor maintains that the leakage and breakage in the curtain wall were the result of deficiencies in the design of this portion of the building by the owner-architects and for which the contractor cannot be held responsible. The contractor maintains that the design of the curtain wall is minimal at best, that it was an improper system to use on a thirty-two-story structure in a city like Tulsa where the wind velocity is frequently excessive, and that the system would leak even if properly installed because of the movement of the building and the glass.

The trial court found that the curtain wall system was inadequate for the proper protection of a building of the size, height, and geographical location of the building in question, even if installed according to specification. It was also concluded that Advance Glass installed the system according to plan, doing the best job possible given the materials they were required to use.

There was detailed testimony as to the devices used to position the glass in the metal frames, where the large panes should have been placed, the drainage devices, the sealing materials, and the movement from wind and temperature changes. There was conflicting testimony as to whether the curtain wall system used would be suitable at all for this particular building. The trial court found that the design of the curtain wall was deficient in numerous respects and the system, if installed exactly in accordance with the plans, was inadequate for the proper protection of the building of the size and height of this one. The court also found that the glass was prop-

erly installed by Advance Glass Company. The court also found there was no adequate proof of damages as to the curtain wall. These findings are supported by the record, and the legal conclusions are likewise correct. While a contractor acquiesces in the use of a particular material or system, at the same time guaranteeing his work, the architect impliedly warrants the sufficiency of the overall construction plan, and the latter is necessarily of paramount and controlling importance. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166. The person who designs the structure is responsible for insufficiencies in the effectiveness for the purpose intended. J. Ray McDermott & Co. v. Vessel Morning Star, 431 F.2d 714 (5th Cir. 1970).

Plaintiffs' third major complaint concerns alleged improper installation and leakage of the "store front" system, a system of large lights of glass supported by metal framing which is commonly used at ground level. In the Fourth National Bank Building, after the original design had been changed so that the building would be thirty-two stories high, the store front system designed by the owner-architects was installed on the thirty-first and thirty-second floors by Advance Glass. Again, the defendant contractor maintains that the store front was properly installed. The record shows, however, that it is of a design and structural strength inadequate to resist high winds and wind-driven rain. The trial court found installation was in accordance with the plans, and the defects were caused by the design. The trial court's findings are supported by the record and its conclusions are correct.

Plaintiffs' final complaint against the defendant contractor is that the contractor prematurely installed waterproofing in planter box areas on the thirty-first and thirty-second floors, thereby permitting damage by subsequent construction activities. There was conflicting evidence as to who actually caused the damage, and the trial court concluded that

the plaintiffs failed to sustain the burden that the waterproofing was damaged either by the contractor or other persons for whom he was responsible. We find nothing in the record which suggests that the trial court's finding is not correct.

There is an additional dispute as to the amount due to Advance Glass for change orders and for changes in shop drawings. It is sufficient to say that the evidence was conflicting on many of the elements that went into the totals, and that there is sufficient evidence to support the findings of the trial court. As to much of the claim made by Advance Glass, that not agreed upon, there was no proof by way of original books and records. The proof showed that Advance Glass had gone out of business some years before and the records no longer existed. On this point of failure to produce records, the appellants assert that the Oklahoma case of Great Western Motor Lines, Inc. v. Cozard, 417 P. 2d 575, is controlling; however, there no explanation of the failure to produce was made as it was here. Thus the court in Great Western applied the basic best evidence rule. We do not consider that the Great Western case is applicable, and hold instead that the trial court applied the correct rule.

A final proposition is urged by the plaintiffs. It is contended that the trial court erred in amending its findings of fact with reference to the third party defendant's claim after the plaintiff-appellants had filed their notice of appeal. The appellants filed their notice of appeal on March 17, 1970, and the contractor filed its motion to amend the court's findings on March 19, 1970. Accordingly, plaintiffs maintain that the trial court was without jurisdiction to make substantive changes or amendments to its findings of fact and conclusions of law. Arguments on the motion were made by all parties on April 9, 1970, and an order sustaining the motion in part was entered on April 27, 1970. Plaintiffs rely on Fiske v. Wallace, 115 F.2d 1003 (8th Cir. 1940), which held in part that where plaintiff's motion to amend the district court's conclusions of law was filed after the defendants had taken their appeal, the motion did not function to retain the district court's jurisdiction of the case or to extend the time of appeal. In Fiske the court considered the relationship between Rule 52(b), allowing a party to file a motion to amend judgment within ten days after entry, and the opposing party's right to file an appeal within the same period of time. It was there decided that ". . . the mere existence of plaintiff's right to proceed under Rule 52(b) . . . did not deprive the judgment defendants of the right to take an appeal accorded them by the statute." See also the state case of Dolbeer v. Harten, 91 Idaho 141, 417 P.2d 407 (1966), which held that a timely motion to amend findings could not be considered by the trial court when notice of appeal was filed before the motion was made.

In this consideration, Rule 60(a) has a part, for it provides in part that mistakes in judgments and errors arising from oversight or omission may be corrected by the district court either on its own initiative or on motion so long as the appeal has not been docketed in the appellate court. The problem is essentially one of characterization, that is, whether a substantive change or amendment was made or whether the amended conclusions and judgment were in the nature of corrections. The change here resulted from the trial court's recognition and application of plaintiffs' Exhibit 9, which had been introduced at trial. The change in judgment did little more than accommodate the terms of Exhibit 9, which is a prior agreement between the plaintiffs and the defendants as to which would pay the amount found due to Advance Glass.

We must hold that the change in judgment amounted to a correction of an oversight or omission and was permitted under Rule 60(a).

The judgment is affirmed.