Oliver T. CARR, Jr., Appellant,

v.

Philip J. BROWN and George F. Bason, Jr., Appellees.

No. 12922.

District of Columbia Court of Appeals.

Argued June 14, 1978.

Decided Nov. 24, 1978.

---

William Joseph H. Smith, Washington, D. C., with whom Richard F. Siegel, Washington, D. C., was on brief, for appellant.

Philip J. Hirschkop, Alexandria, Va., for appellee Bason.

Nicholas A. Addams, Washington, D. C., for appellee Brown.

Before KELLY, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

Appellant filed his complaint in the trial court alleging that appellees maliciously interfered with his business of developing property he owns in the so-called West End area of the city. The court granted appel-

lees' motion to dismiss on September 27, 1977.

## I

At the outset, appellees argue that this court lacks jurisdiction to entertain the appeal on the ground that appellant's notice of appeal was not timely filed in accordance with D.C.App.R. 4(II)(a)(2). In a civil case, an appellant must file a notice of appeal with the clerk of the Superior Court within 30 days after entry of the judgment or order being appealed. D.C.App.R. 4(II)(a)(1). The running of this time is postponed, however, by the filing of a motion to amend or make additional findings of fact. D.C.App.R. 4(II)(a)(2).

The appeal time commenced to run in this case on September 27, 1977, when the trial court dismissed without explanation appellant's complaint. Counsel for appellant then requested by letter that the trial court state the grounds underlying the dismissal of his complaint. On October 6, 1977, the trial court issued a memorandum order stating that all of appellant's claims, save one, were barred by the statute of limitations and that the remaining claim was defeated by a privilege held by both defendants (appellees) to engage in the type of activity set out in the complaint.

On October 17, 1977, appellant filed with the trial court a "Motion to Reconsider and Amend Order and Memorandum Order." While this motion to reconsider and amend was pending, appellant, on October 26, 1977, filed a notice of appeal with this court, stating in the notice that he was appealing from both the September 27, 1977 order and the memorandum order of October 6, 1977. The trial court, on November 8, 1977, denied appellant's motion to reconsider and amend. No notice of appeal has been filed relating to this order.

Appellees contend that the October 17 motion for reconsideration postponed the running of the appeal period under D.C. App.R. 4(II)(a)(2), and the time in which to appeal did not commence to run again until November 8, 1977, when the court denied appellant's October 17 motion to reconsider.

Thus, appellees urge, the appellant filed his notice of appeal *before* the court had issued its final order, making the appeal premature and stripping this court of jurisdiction to hear the case. It may be seen that appellees premise this argument on the assumption that appellant's October 17 motion was timely. However, if that motion was *not* timely filed, then appellees' argument founders.

Super.Ct.Civ.R. 59(e) states that "a motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Appellant argues that his October 17 motion was untimely as to the court's September 27 order of dismissal, but concedes that his reconsideration motion was timely as to the court's memorandum order of October 6. The issue we must decide is whether the court's memorandum order of October 6 was a final order which would begin the running of the time during which appellant could make a motion to amend, or whether it was simply a reaffirmation of the court's order of September 27 dismissing the complaint.

The September 27 order stated that the motion to dismiss the complaint was granted. There was no explanation nor were points and authorities supporting the dismissal cited. Two days later, as we have noted, appellant submitted to the court a letter requesting clarification of the court's ruling. This letter was not in the form of a motion and not captioned and titled as required by Super.Ct.Civ.R. 7(b)(2) and 10(b). It was also not accompanied by a proposed order or memorandum of points and authorities as Super.Ct.Civ.R. 12–I(e) requires. The effect of the letter was nothing more than to ask for an explanation of the court's September 27 order of dismissal. The court's subsequent memorandum order on October 6 merely reaffirmed its earlier order, since it did nothing to alter or amend that order in any way. We conclude that the September 27 order was the final order which began the ten-day period during which a motion to amend could be filed, and that the court's October 6 order in answer to appellant's request for a clarification was

not such an order as to begin that ten-day period running anew. Therefore, the motion of October 17 was untimely, the appeal was properly filed, and this court has jurisdiction to entertain this appeal.

■ An analogous situation may be found in *Hodgson v. United Mine-Workers of America,* 153 U.S.App.D.C. 407, 473 F.2d 118 (1972). In *Hodgson,* the issue was which of two orders of the trial court denying intervention was to be used in computing the 30-day period within which an appellant must file an appeal under Fed.R. Crim.Proc. 4(a).

> In the final analysis, the question of jurisdiction must be resolved by ascertaining whether the [later order], from which this appeal was taken, was merely a reinstatement of the court's [earlier] ruling, or whether it constituted a new determination by the District Court .⁶ .
> If the later order was only an attempt to revive the earlier order, it did not start the time for appeal all over again. But if, on the other hand, it was in essence a new decision on appellants' motion for intervention, the [later order] is properly before us. [*Hodgson, supra* at 414, 473 F.2d at 125 (footnote omitted).]

We are of opinion that scrutiny of the second order to determine its purpose, *i. e.,* whether it is designed to merely reiterate an order or whether it is designed to amend or alter it, is the proper analysis in determining from which order the time within which to file begins to run. This we have done, and find the second order to be just an explanation of the earlier order.

Appellees contend that *West v. United States,* D.C.App., 346 A.2d 504 (1975), should be controlling here. In that criminal case, the issue was whether an appeal filed *after conviction* but *before sentencing* was sufficient to give this court jurisdiction. We concluded that the order was not final until sentencing occurred and that since the notice of appeal was filed prematurely, we had no jurisdiction to entertain it.

> This policy to limit appeals to those taken from final orders is particularly strong in criminal cases where "delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." [*Id.* at 505 (citation omitted).]

*West* seems inapposite to the facts before us now. There we were concerned with whether a convicted defendant in a criminal case may appeal before being sentenced. The instant case is a civil appeal; even if we were to find this appeal to have been filed too early, it is doubtful that the same concerns that led us to deny "premature" criminal appeals would apply here.¹ Therefore, *West* must be restricted to its own facts.

II

We turn now to the substantive issue on appeal. Appellant Carr, a real estate developer in the District of Columbia, alleged in his complaint in the trial court that Brown, a property owner in the so-called West End area, and Bason, his attorney, maliciously interfered with appellant's business in developing his property located in the West End. For the reasons which follow, we affirm the decision of the court which dismissed the complaint.

The complaint, consisting of three counts divided into some 40 paragraphs, alleged in essence that in 1975, Carr filed an application with the Transportation and Environmental Affairs Committee of the City Council (Transportation Committee) requesting permission to close and relocate a portion of the alley in Square 14, his property, which is at 26th Street, N.W., between Pennsylvania Avenue and M Street. Appellant claimed that such a closing was necessary in order to develop his property in accordance with the existing C–R (Commer-

---

1. Several appellate courts have found jurisdiction in civil cases even where the appeal was technically "premature." *E. g., Vanbeever v. DeWolf,* 528 F.2d 932 (3d Cir. 1976); *Stokes v.* *Peyton's, Inc.,* 508 F.2d 1287 (5th Cir. 1975); *Suh v. Rosenberg,* 437 F.2d 1098 (9th Cir. 1971).

cial-Residential) zoning.[2]  Neither appellee owns property abutting the alley, but Brown and his family own substantial property interests approximately two blocks away at 1242–1250 24th Street, and are members of West End Planning, Inc., an organization comprised primarily of area property owners interested in the zoning and development of the West End area. Appellant is president and a director of this organization.

The basis of Carr's three-count cause of action is that through malicious acts and false statements, Brown and Bason have unjustifiably opposed, and incited others to oppose, the alley closing.  Their allegedly actionable behavior includes oral and written statements made before the Transportation Committee, the Board of Zoning Adjustment (BZA)[3] and the Advisory Neighborhood Commission for the West End and their incitement of area residents to oppose the alley closing and relocation.  According to appellant's complaint, appellees' action caused a delay in the Transportation Committee's ruling, which in turn caused the damages Carr is seeking for delay of his anticipated business venture.

■  The trial court dismissed appellant's complaint on the ground that his cause of action was for defamation, and the one year statute of limitations applicable to defamation suits (D.C.Code 1973, § 12–301(4)), barred the action.  Appellant contends on appeal that the trial court misconstrued the nature of his action.  As he states it, his cause of action is for malicious interference with his business expectancies and *not* for damage to his reputation or defamation of his business.  Therefore, he urges that the *three-year* statute of limitations applies. On this point we must agree with appellant and conclude that the court was in error in

determining this cause of action to be for defamation and barred accordingly by the statute of limitations.

It is necessary to scrutinize the complaint in order to determine the nature of the wrongful acts and the harm alleged.  *See Universal Airline v. Eastern Airlines,* 88 U.S.App.D.C. 219, 188 F.2d 993 (1951); *Vaccaro Construction Co. v. A. J. DePace, Inc.,* 137 N.J.Super. 512, 349 A.2d 570 (1975).  In essence, appellant claims that he and another hold title to the lots in question and that he was, and continues to be, engaged in the business of developing that property.  He contends that appellees have maliciously interfered with his efforts to develop his property by attempting to defeat or delay the alley closing and relocation and the exception to the zoning restrictions on building heights which were absolutely essential to development of the property.  As a result of appellees' activities, the closing and rededication of the alley and the development of his property were delayed for more than nine months beyond appellant's expectations, causing him to incur damages for (1) additional carrying costs on his property, (2) additional design and construction costs to his project, (3) lost profits from the sale of condominium units and rental of commercial units, and (4) loss of return on appellant's money invested in his property during the delay.

Appellant is clearly correct in his argument that his cause of action is not for defamation but rather that, through the use of false and malicious statements, appellees attempted to interfere with the economic advantages he expected from the use of his property once these applications were approved.  In short, damages are not sought by appellant in his complaint for harm to reputation, but to his property, or more accurately, to his business expectations.

2. The area became C–R zoned in 1973 at the instigation of West End Planning, Inc., and Carr, its president.  Subsequently, Brown, a member of West End, filed suit against Carr for breach of fiduciary duty. [Civil Action No. 6971–73 in Superior Court of the District of Columbia.]  While Carr mentions this fact in his complaint, he does not assert abuse of process in the initiation of that earlier action.

3. Appellant also urges that appellees maliciously opposed a proposed zoning exception to the existing height restriction he sought by disrupting the Board's meeting and causing delay before the Board by various procedural maneuvers.

The tort appellant is asserting in his compliant has many labels, but we think it may be best termed interference with prospective advantage. W. Prosser, *Torts* § 130 at 949 (4th ed. 1971). It is only "loosely allied to defamation." *Id.,* § 128 at 915.

That the acts of an individual in maliciously interfering with the business rights of another are actionable in tort, regardless of the slander involved, is of long standing . . . Such an action differs markedly from a regular libel or slander action. [*Vaccaro Construction Co. v. A. J. DePace, Inc., supra,* 349 A.2d at 573 (citations omitted).]

■ By this theory, business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, are considered to be property and therefore protected from unjustified interference.

[S]ince a large part of what is most valuable in modern life depends upon "probable expectancies" as social and industrial life becomes more complex the courts must do more to discover, define and protect them from undue interference. [Prosser, *Torts, supra* § 130 at 950.]

However, there is a major distinction between the theory underlying the claim that appellant asserts here and the *tort of interference with prospective advantage.* This particular tort contemplates generally an interference with prospective contractual or business relations. *Id.* Appellant in the instant case is claiming interference with expectations of profit that were wholly contingent upon the decisions of two governmental bodies, *viz.,* the Transportation Committee and the Board of Zoning Adjustment. These bodies are required to make such decisions only after hearing interested parties. Consequently, opposition to any application before either body is invited so that an informed and prudent decision, after having heard all viewpoints, is rendered. The "expectancies" which appellant claims in his action against appellees are in our view simply too remote, depending as they do on governmental approval.

For the most part the "expectancies" thus protected have been those of future contractual relations, such as the prospect of obtaining employment or employees, or the opportunity of obtaining customers. In such cases there is a background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered. [Prosser, *Torts, supra* § 130 at 950.]

An applicant such as appellant in this case cannot expect upon the basis of any experience that his application will be automatically approved within a specified period of time. Appellant cannot contend that because he encounters opposition to his application, some of which may be malicious, that the opponent is thereby interfering with his "expectancies" so as to constitute a tort. Rather the person who is "interfering" with the applicant's petition for an alley closing and a zoning exception is participating in procedures fixed by statute which specifically invite opposition. Accordingly, we conclude that appellant's "expectancies" of approval by the Transportation Committee and the Board are not of the character that may be protected by this cause of action for the tort of interference with property.

We emphasize this is *not* a case involving alleged interference with business due to malicious *official* refusal to issue necessary permits. *See City of Rock Falls v. Chicago Title and Trust,* 13 Ill.App.3d 359, 300 N.E.2d 331 (1973). There the beneficial owner of property claimed, *inter alia,* that an official, the mayor, unlawfully refused to issue building permits and to provide water or electricity, and the court found a cause of action for interference with property. Nor are we dealing in this case with a claim by the plaintiff that he has an expectancy of *doing business with* a governmental body and that expectancy is unjustifiably interfered with by the defendant. *Somers Construction Co. v. Board of Education,* 198 F.Supp. 732 (D.N.J.1961).

We find *Hohl v. Mettler*, 62 N.J.Super 62, 162 A.2d 128 (App.Div.1960), relevant to the instant case. In *Hohl*, plaintiff sued defendants for damages resulting from their action in causing to be revoked a license which permitted plaintiff to establish a trailer park on certain land. According to the complaint, the defendants published a cartoon in a local paper depicting a dirty, unkempt trailer park, published an advertisement stating that the schools could not accommodate the extra children of trailer park families who pay little or no tax, and made statements to newspapers and the township committee meeting that health would be impaired by inadequate health facilities. After finding that the appellees enjoyed at least conditional immunity,[4] the court affirmed the summary judgment granted in favor of the defendants for the reason that the absence of proximate cause prevents, in a practical sense, any cause of action for interference with property:

> [I]t becomes obvious that any attempt by a jury at apportionment of a substantial causative role in the final determination of the governing body to such of defendants' statements or advertisements as might be found to have been knowingly false or maliciously motivated (which alone would carry liability), as distinguished from the mass of other relevant data and the influence of general public opinion marshalled before it, would constitute an exercise in sheer conjecture and speculation. [*Id.* 162 A.2d at 131.]

The proximate cause of the alleged nine-month delay here in approving appellant's applications could be attributed to appellees' malicious opposition or the normal processing engaged in by governmental bodies. To require the trial court to attempt to determine the cause of the lapse of time in a tort case such as this would lead to futile speculation since there is no definite answer as to why the administrative bodies here took as long as they did in determining appellant's applications.[5]

Our affirmance does not, of course, leave applicants for governmental licensing unprotected from false or malicious statements from parties in opposition who appear before the various governmental bodies; false statements that are defamatory are actionable unless privileged. However, appellant has chosen in his complaint not to plead defamation. We view the dismissal in the trial court on the theory of interference with property as proper and we conclude appellant has failed to state a valid cause of action.

Accordingly, we affirm the trial court's dismissal.

*So ordered.*

---

4. While in the present case the appellees' statements and activities were entitled to some degree of immunity, appellant argues that the malice of appellees denies them the protection of any immunity. We need not reach the issue of the extent of such immunity in light of our disposition of the appeal.

5. We are not, of course, in this case reviewing an agency's refusal to act or its *inordinate* delay in taking action on an administrative order or decision. *See* D.C.Code 1973, § 1–1510(2), which gives this court power to "compel agency action unlawfully withheld or unreasonably delayed."