Paul M. LEWIS, Appellant,

v.

Doris LEWIS, Appellee.

No. 6080.

District of Columbia Court of Appeals.

Argued July 10, 1972.

Decided Feb. 27, 1973.

Glenn R. Graves, Washington, D. C., with whom John W. Karr, Washington, D. C., was on the brief, for appellant.

Lemuel R. Green, North Canton, Ohio, for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from a judgment ordering support payments under a support agreement which had been ratified and approved by the decree of divorce, October 14, 1968.

Paragraph 8 of the agreement provides that no alimony shall be due "[s]o long as the Wife is employed and has gross earnings, before payroll deductions, of Eight Hundred and Forty Dollars ($840.00) per month".

Paragraph 9 provides that should the wife become unemployed then the husband shall pay her $500 per month. Although the wife became unemployed on or about March 3, 1970, she has been receiving since then a federal disability retirement of $409 per month. Consequently, we reject, as did the trial court, appellee's contention that the wife being unemployed, should be entitled to the full $500 per month payment from the husband. Paragraph 11 provides that her earnings shall include gross amounts received by her as a pension under the Social Security system "or any retirement program."

The real issue in this appeal is how the husband's monthly liability for support payments is to be computed when the wife's income is less than $840 per month. Paragraph 9 further provides in pertinent part:

If the Wife shall be employed, either full or part time, or during only part of a month, but shall earn less than the amount provided in paragraph 8, above, in any such month when her earnings shall be less than that amount, the Husband also shall be required to make payments for the support and maintenance of the Wife, but the payment by the Husband in any such month shall be that proportion of Five Hundred Dollars ($500.00) which is equal to the proportion of the Wife's *gross* earnings from employment for the month to the total of Eight Hundred and Forty Dollars ($840.00). . . . [Emphasis supplied.]

The trial court entered judgment against appellant husband for $2,921.40 in accordance with a literal reading of the agreement, that is, the husband's monthly payment was to be in the same proportion to $500 that the wife's income is to $840. Since the wife receives $409 monthly from a government disability retirement as compared to her former salary of $840, the court concluded the husband's payment should be in a similar proportion to the

agreed figure of $500, or $243.45 per month.

However, accepting the literal language of the agreement as above would mean that while the husband's obligation would end if the wife's earnings reached $840, he would, surprisingly enough, be required to pay $450 (90% of $500) per month if her total earnings dropped only 10% to $756 per month. This would mean her monthly income would rise to $1206 per month.

On the other hand, should her earnings fall to 10% of $840 or $84, the husband by such a formula would not be obliged to make up most of the difference of her lost income, but rather would only be called upon to pay 10% of $500 or $50 per month, making a total income for the wife of only $134 per month. It is patently clear, as both parties have admitted, that such an agreement would be grossly unreasonable and was not intended.

It has long been recognized that in appropriate circumstances extrinsic evidence may be admitted regarding a written instrument to determine the intent of the parties. Cabrera v. American Colonial Bank, 214 U.S. 224, 230, 29 S.Ct. 623, 53 L.Ed. 974 (1909).[1]

This exception to the parol evidence rule permits inquiry into the real intent of the parties[2] "and, if necessary, amendment of the writing to accomplish that purpose." The writing is simply evidence of the agreement and it would be a monstrous injustice to force upon the parties terms which it is clear they had not actually intended. Murray v. Gadsden, 91 U.S.App. D.C. 38, 46, 197 F.2d 194, 202 (1952).[3]

At trial the wife testified ". . . it was my understanding at the time that I signed the agreement that . . . the more supplementation of whatever I was able to earn, I needed, the more I would get up to that level." (Tr. at 69.) The husband testified regarding the agreement: "It doesn't make much sense" and "I don't feel I can interpret the agreement." (Tr. at 101, 105.)

At argument to the trial court her counsel said: "Plainly, Mrs. Lewis thought that her payments would go, her payments from Mr. Lewis would go down as her earnings increased . . . ." (Tr. at 115.) That is, the amount of his payments would rise or fall in the $500 range in proportion to the rise or fall of her loss of earnings in relation to $840.

As summarized in appellant's brief, page 8, "[b]oth parties agreed that the support provision of the agreement—notably the arrangement of support payments in direct rather than inverse proportion to earnings —did not accurately reflect their intent."

At oral argument appellant agreed he could accept an interpretation of the agreement whereby the husband's obligation would be computed in relation to the wife's loss of earnings, including her retirement benefits. It is clear that this is what the parties thought they were agreeing to and what the agreement was intended to accomplish.

For example, if the husband's monthly liability, when the wife's total earnings drop to $756 per month (90% of $840), is computed as a percentage of $500 equal to the percentage of her loss of income (10%) his monthly liability in the first hypothetical situation above would be $50 rather than $450. In the hypothetical situation where the wife's income drops 90%, the husband's liability would be computed on a basis of 90% of $500 or $450.

Although not suggested by either party, it is abundantly clear from the

1. *See also* Wigmore on Evidence § 2417, at 59 n.3 (3d ed. 1940).

2. Peugh v. Davis, 96 U.S. 332, 336, 24 L. Ed. 775 (1878); Vakas v. Manuel, 114 U.S.App.D.C. 368, 316 F.2d 369 (1963).

3. *See also* 3 Corbin, Contracts § 614 (1960).

record and argument of counsel that the agreement would accurately reflect the intentions of both parties if the words "loss of earnings," had been used in paragraph 9 in place of the words "gross earnings."

So worded the husband's obligation increases in proportion to the wife's loss of earnings which is what the wife thought the agreement provided and what the husband is prepared to accept.

Whatever the reason may be for a wording to which both parties object, the only reasonable interpretation of the agreement, and one which we are satisfied reflects the intent of the parties, is that the husband's obligation of support was to increase as the wife's earnings decreased and vice versa.

Consequently, if her income from disability retirement payments is $409, which is 48.69% of her base income of $840, then the husband's obligation would be 51.31% of his base obligation of $500 or $256.60 per month.

We do not find paragraph 11 of the agreement to be ambiguous. Its meaning is clear when applied in conjunction with paragraph 9 so that when the wife is unemployed, or employed part-time, her earnings "shall include gross amounts received by her as a pension under the Social Security system of the United States, or any retirement program."

We note that when the wife became so ill she could no longer work, the husband immediately began making monthly payments to her in the full amount of $500 per month until she was granted a disability retirement four months later, which was made effective as of the day she quit working. Accordingly, appellant should receive a credit of $243.40 for his overpayment each of those four months. His obligation per month since the date his wife ceased working would be $256.60.

Reversed in part and remanded with judgment to be entered in accordance with this opinion.