Leslie S. SWIFT, Appellant,

v.

Walter E. SWIFT, Appellee.

Walter E. SWIFT, Appellant,

v.

Leslie S. SWIFT, Appellee.

Nos. 87–527, 87–1134.

District of Columbia Court of Appeals.

Argued Oct. 11, 1989.
Decided Nov. 21, 1989.

**1046**

Francis D. Carter, Washington, D.C., for appellant in No. 87–527 and appellee in No. 87–1134.

Gerald Bruce Lee, Alexandria, Va. for appellee in No. 87–527 and appellant in No. 87–1134.

Before TERRY, SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

This appeal and cross-appeal involve primarily issues of interpretation of a separation agreement entered into by the parties on November 2, 1979, which purported to be a "full settlement of their respective obligations and property rights." With respect to the appeal by Mrs. Swift, we affirm the trial court's denial of alimony and refusal to award her a share of the husband's pension. With regard to the cross-appeal by Mr. Swift, we affirm the award of attorney's fees to Mrs. Swift, but vacate the order and remand to the trial court for further findings justifying the increase it ordered in Mrs. Swift's ownership share in the marital home. We also direct the trial court to vacate the portion of its order prohibiting either party from encumbering its interest in the marital home. We deny Mrs. Swift's request for attorney's fees on appeal.

I.

We agree with the trial court that, by the terms of the separation agreement, Mrs. Swift waived any claim to alimony or a share of her husband's pension rights. Under District of Columbia law, where a separation agreement is fair and reasonable and is intended as a final disposition regarding property rights or adult support, the parties will be bound by the agreement. *Spencer v. Spencer,* 494 A.2d 1279, 1285 (D.C.1985); *Alves v. Alves,* 262 A.2d 111, 118 (D.C.1970). Paragraph 14 of this agreement provides broadly that the parties waive "any and all rights, claims, and causes of action of any nature whatsoever each may have against the other except ... [those] necessary to enforce the provisions of this agreement." Moreover, while the agreement is silent on the issues

of alimony and future pension rights of Mr. Swift,[1] paragraph 2C specifically waives "all rights each [party] may have or acquire hereinafter under the present or *future laws* of any jurisdiction to inherit *or otherwise share in the property or estate*" of the other "*as well as* any right ... to serve as executor, administrator, or personal representative" of the other's estate (emphasis added). Mrs. Swift asks us to read this provision as limited only to the rights of each party to inherit from the other's estate, not as precluding her from seeking alimony and a share of her husband's pension during his life. The broad language of paragraph 2C, however, does not admit of that interpretation. It speaks of the rights of the parties to inherit *or* share in the property *or* estate of the other. Moreover, as observed, paragraph 14 states unequivocally that the agreement is meant as a complete settlement and that both parties waive *any and all* claims of *any* nature they may have against the other.

■ Since these provisions are unambiguous, Mrs. Swift is seeking what amounts to a modification of the agreement. To be sure, in certain circumstances a trial court may modify agreements which are incorporated but not merged into a divorce decree, but the authority to do so is limited. *Hamel v. Hamel*, 539 A.2d 195, 199 (D.C. 1988); *Cooper v. Cooper*, 472 A.2d 878, 880 (D.C.1984). Such modifications require a showing that a substantial and material change in circumstances unforeseen at the time the agreement was signed has occurred. *Hamel, supra*, 539 A.2d at 199 (spousal support); *Cooper, supra*, 472 A.2d 880 (child support); *Rice v. Rice*, 415 A.2d 1378, 1383 (D.C.1980) (custody arrangements). No such showing has been made in the present case.

■ While Mrs. Swift's condition appears to have worsened somewhat since the agreement was signed, the trial court found that at the time she negotiated the agreement she was fully aware of the normal anticipated course of her illness. Mrs. Swift had been diagnosed with multiple sclerosis in 1970, nine years before signing the agreement. She had already experienced substantial bodily dysfunction by 1979, and the prognosis of Dr. Woods (her treating physician) as of 1977 was for slow but continued deterioration of her health. Accordingly, the trial court's finding that any further decline in Mrs. Swift's health in the intervening years, although regrettable, was not unforeseen is supported by the record, D.C.Code § 17–305(a) (1981); *see Williams v. Williams*, 554 A.2d 791, 793 (D.C.1989), and we are not free to disturb it. No grounds exist for modification of the agreement.

II.

■ In his cross-appeal, Mr. Swift argues that the award of attorney's fees to his wife was improper. The trial court found that Mrs. Swift had sustained counsel fees amounting to $8667.90 and awarded her $5500 of that amount. Although the trial court's order lacks the specific findings called for by our decisions, *e.g., Rachal v. Rachal*, 489 A.2d 476 (D.C.1985), under the circumstances of this case, the trial court did not abuse its discretion. The court heard testimony about the financial situation of each party and had access to their financial statements. Although the court rejected Mrs. Swift's requests for alimony and a share of her husband's pension, as have we, we cannot say that her arguments were so lacking in merit as to preclude the modest sum of fees awarded by the trial court.[2] At the same time, we

1. District of Columbia law did not recognize vested pension benefits as marital property at the time the agreement in this case was executed. *See Barbour v. Barbour*, 464 A.2d 915 (D.C.1983).

2. We reiterate for the benefit of the trial court the requirement of our decisions for detailed findings supporting an award of attorney's fees.

We do not remand on this issue in the present case, however, because the award is a modest one, and a remand for further findings might require more litigation and the expenditure of more money by the parties, who are of limited means, with little likelihood that the result would be different.

reject Mrs. Swift's request for attorney's fees on appeal.

■ Mr. Swift's remaining contention is more troublesome. The trial court found that after Mr. Swift vacated the home in 1979, he did not routinely contribute to its maintenance and upkeep and that, since his departure, the home had appreciated in value. As reimbursement for Mrs. Swift's maintenance, protection, and repair of the home without his participation, the court awarded Mrs. Swift an additional 10% of the equity in the home. The court further ordered that neither party was to encumber his or her interest in the property without the written consent of the other.

The basis upon which the court modified this portion of the separation agreement is unclear. The court made no finding that there had been any substantial or unforeseen change in circumstances. The modification, therefore, was not based on the rationale of *Cooper v. Cooper, supra.* It is possible that the court found the agreement to be ambiguous with regard to maintenance and upkeep and then, based upon the parol evidence presented at trial, concluded that the parties intended to share these expenses.[3] *See Spencer, supra,* 494 A.2d at 1286 (ambiguity in separation agreement is subject to court modification; court must view provisions of agreement consistently with parties' intent at time it was entered).

If this were the basis for the trial court's order, we would have difficulty in sustaining it. The agreement, by excluding any rights or claims of the parties not addressed therein, appears no more ambiguous on the matter of upkeep and maintenance of the house than on the issues of alimony or pension rights. Since we are uncertain of the basis for the court's ruling, however, we do not discuss this point further.

There is also an indication in the record that the trial court may have interpreted paragraph 10 of the agreement as allowing it to make modifications as it saw fit. This paragraph states that the agreement shall be incorporated but not merged into any divorce decree and shall be "forever binding unless and until modified by a court of competent jurisdiction...." Here too, if that were the court's reasoning, it would be difficult to sustain. A separation agreement incorporated but not merged into a final divorce decree is governed by the law of contracts. *Clark v. Clark,* 535 A.2d 872, 876 (D.C.1987); *Spencer, supra,* 494 A.2d at 1285. The standard for modification is therefore more restrictive than it would be if the trial court were modifying a prior divorce decree or an agreement merged into that decree. *See Hamel v. Hamel, supra,* 539 A.2d at 197; *Albus v. Albus,* 503 A.2d 1229, 1231 (D.C.1986). Paragraph 10 of the agreement clearly contemplates the more restrictive standard for modification. An interpretation allowing modifications as the trial court sees fit would render the language providing for non-merger of the separation agreement meaningless.

Finally, the trial court simply may have preceived it to be unfair that Mr. Swift, while making minimal contributions to the home since 1979, should be able to benefit from the substantial appreciation in its value. This court has held that, although the power of the court to modify separation agreements is limited, *Spencer, supra,* 494 A.2d at 1286, performance may be ordered that is not identical with that promised in the agreement "where justice so requires." *Id.* Before we will sustain a modification on this broad equitable ground, however, we must be sure that the trial court relied on it. Moreover, in invoking that authority the trial court must make findings specific enough to permit meaningful review of a modification that contradicts the original agreement of the parties to settle their affairs fully between themselves. *See Pimble v. Pimble,* 521 A.2d 1173, 1174–75 (D.C.1987) (trial court is required to make written findings and conclusions of law suf-

---

**3.** Mr. Swift's failure to contribute would then be a violation of the agreement for which the court could compensate Mrs. Swift. *See Travis v. Benson,* 360 A.2d 506, 510 (D.C.1976) (awarding wife the husband's share of marital home as compensation for husband's failure to meet support obligations).

ficient to permit meaningful appellate review).

We intimate no view on whether the decision to award Mrs. Swift an additional 10% equity interest on this ground would be proper. Instead, we shall vacate the judgment of the trial court insofar as it modifies the parties' respective ownership shares in the home, and remand the case for a more specific statement in justification of this departure from the agreement.

Finally, on remand the trial court should delete that portion of its order prohibiting either party from encumbering the marital home in any way without first receiving the written consent of the other party. Neither party requested this modification of the agreement (and, indeed, it does not appear in the Judgment portion of the trial court's opinion). A court should not invent a need to change the agreement which neither party has discerned.

Accordingly, that portion of the trial court's judgment which modifies the parties' respective ownership shares in the marital home is vacated and the case is remanded for further proceedings in accordance with this opinion. In all other respects, the judgment is affirmed.

*So ordered.*