**Ozzie CLAY, et al., Appellants,**

v.

**Richard C. DEERING, Appellee.**

**No. 88–CV–1221.**

District of Columbia Court of Appeals.

Argued Nov. 20, 1992.
Decided Dec. 4, 1992.*

Stephen S. Boynton, for appellants.

Sharon Van Pelt, for appellee.

Before FERREN and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

Appellants Ozzie Clay, individually, Clay Properties, Inc. and Clay and Company, Inc. appeal from the Superior Court's order denying a motion to vacate a default judgment granted in favor of appellee, Richard C. Deering, for appellants' failure to attend a pretrial conference and for noncompliance with prior discovery orders. Appellants claim that they did not receive notice of the pretrial conference. The Superior Court further dismissed appellants' counterclaim and permitted a pre-judgment attachment on one of the appellants' assets to be released to appellee after an *ex parte* hearing on the issue of damages. Appellants also submitted a motion for reconsideration and a motion to vacate the default judgment based upon newly discovered information and evidence suggesting fraud on appellee's part which the trial court also denied. Appellants now appeal the trial

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on December 4, 1992. It is now being published by direction of the court.

court's decision claiming that it abused its discretion in denying appellants' motion to vacate the default judgment.

## I.

This action began on May 1, 1986, when appellee Richard C. Deering, an attorney, filed suit against appellant Ozzie Clay, an individual, Clay Properties, Inc. and Clay and Company, Inc., both close corporations owned by Ozzie Clay, seeking to recover $37,760 in legal fees for services rendered for appellants during the period between October 1, 1982 and July 18, 1986. Appellants denied the allegations of fees owed in their complaint, and filed a counterclaim asserting legal malpractice against appellee.

Various discovery disputes arose between the parties throughout the litigation. These disputes culminated with the trial court ordering appellants, on two separate occasions, to produce all documents and to answer all discovery requests completely. Orders were issued on May 15, 1987 and on October 13, 1987, respectively, for appellants to comply with appellee's discovery requests and to produce all available documents. Appellee filed its discovery requests on December 2, 1986, and nearly eighteen months later, at the time Judge Eilperin issued the May 25, 1988 order, appellants' responses to the discovery requests were found incomplete. No further compliance followed either of the two subsequent court orders compelling discovery.

On March 11, 1988, a pretrial conference was scheduled with notice for the filing of pretrial statements. Counsel for appellants did not appear at the pretrial conference, and subsequently submitted an affidavit swearing that he did not receive notice of the conference.[1] Appellants did not become aware of the pretrial conference until they received notice from the trial court that an *ex parte* hearing on the issue of proof of damages had been scheduled for April 26, 1988. Upon inquiry to the clerk's office, the appellants learned that the pretrial conference scheduled for March 11, 1988, in fact had been held. At the pretrial conference, Judge Stephen F. Eilperin issued a default judgment in favor of the appellee, and also struck the appellants' counterclaim.

Counsel for appellants notified the appellee on April 22, 1988, of his intent to file a motion pursuant to Super.Ct.Civ.R. 60(b)(6) requesting that the court vacate the default conference on grounds that appellant did not receive actual notice of the pretrial conference. The trial court granted leave to the appellants to file their motion, and cancelled the *ex parte* hearing on damages scheduled for April 26, 1988. Appellee received the proceeds of a pre-judgment attachment on July 8, 1988, in the amount of $37,760.00 (not including interest).

Following oral argument and an extensive review of the record, the trial court concluded on May 25, 1988, that the default judgment should stand in both its own right and as a sanction for appellants' refusal to comply with two prior court orders for discovery. In a lengthy, well reasoned and documented order, the court found that appellants willfully failed to produce the requested discovery documents and failed to answer appellee's interrogatories. The court concluded that the appellants' refusal to comply with two prior court orders was equally without cause.

Additionally, the court concluded that appellee was prejudiced by appellants' failure to comply with appellee's discovery requests (appellant wrongly informed appellee of document location) because appellee was unable to pursue its theory that all of the appellants were alter egos of each other, and thus were all responsible to pay his legal fees. Appellee was also prejudiced by appellants' failure to attend the pretrial conference on March 11, 1988. Consequently, this proceeding was unable to go to trial on April 28, 1988, and the first available trial dates began in January of 1989.

---

1. Appellants were represented by other counsel at the time of filing the answer and the counterclaim. Appellants' present counsel entered his appearance on July 18, 1987. Both counsel submitted affidavits stating that they did not receive notice of the pretrial conference.

Finally, the trial court found that appellants' counterclaim had failed to set forth a prima facie adequate claim of malpractice against appellee. The court noted that appellants failed to produce expert testimony in discovery or to proffer the name of an expert at trial to show that the appellee's representation was below the standard of care expected of a lawyer in appellee's position. For this reason the trial court dismissed appellants' counterclaim.

Appellants then filed a motion for reconsideration and a motion to vacate the default judgment pursuant to Super.Ct.Civ.R. 60(b)(2), (3) & (6) based on newly discovered information suggesting that appellee committed fraud regarding discovery requests. Both motions were denied.

An *ex parte* hearing on damages was held on July 5, 1988, and the court granted appellee's claims against all three appellants, corporate and individual, jointly and severally in the amount of $41,120.00 plus interest.[2] The record contains substantial evidence indicating that Ozzie Clay not only advised appellee to send the legal bills to appellant Clay personally, but that appellant Clay acted as guarantor for all of the corporate bills, irrespective of whether appellant Clay was individually named as a party in the particular litigation.[3]

On August 5, 1988, Judge Eilperin denied appellants' motion pursuant to Super.Ct.Civ.R. 60(b)(2), (3) & (6) to vacate the default judgment, set aside the damages awarded at the *ex parte* hearing, and denied appellants' request to reinstate the counterclaim. The court found that appellants' motion failed to set forth any new information that could not have been discovered earlier with reasonable diligence, and that such information did not affect the May 25, 1988 order.

## II.

The issue presented here is whether the trial court abused its discretion by denying appellants' requests to vacate the default judgment based on appellants' failure to appear at a pretrial conference, and on appellants' allegation of newly discovered evidence of appellee's fraudulent conduct. The requests sought to have the court: (1) set aside the award of damages granted at the *ex parte* hearing; (2) reinstate appellants' counterclaim; and (3) reschedule a pretrial conference. Finding no abuse of discretion, we affirm.

In determining whether to set aside the default judgment and to reinstate appellants' counterclaim, a court must consider specific factors in the balancing process in regard to whether the movant: "(1) received actual notice of the proceeding, (2) acted in good faith, (3) presented a prima facie adequate defense, and (4) acted promptly upon discovery of the judgment." *Union Storage Co. v. Knight*, 400 A.2d 316, 317 (D.C.1979). *See also Walker v. Smith*, 499 A.2d 446, 449 (D.C.1985); *Dunn v. Profitt*, 408 A.2d 991, 993 (D.C. 1979); *Jones v. Hunt*, 298 A.2d 220, 221–22 (D.C.1972). Additionally, prejudice to the non-moving party is considered the fifth factor. *Jones, supra*, 298 A.2d at 221–22. A motion to vacate a judgment under Super.Ct.Civ.R. 60(b)(6) is committed to the trial court's sound discretion. *Union Storage Co., supra*, 400 A.2d at 318. In exercising its discretion, the trial court must weigh the competing considerations of a strong policy favoring the finality of judgments versus the importance of a trial on the merits. *Dunn, supra*, 408 A.2d at 993.

The trial court, in denying appellants' motion, stated that "the court is of the view that not only should defendants' motion to vacate the default judgment and reinstate the counterclaim be denied but

---

2. The amount of $41,120.00 represents the balance for fees owed through June 30, 1986. The amount of $37,760.00 stated in the complaint represents fees as of April 18, 1986.

3. Appellant Clay was named as a party in thirty of thirty-five cases handled by appellee. In two of those thirty-five cases, appellee provided services to Clay and Company, Inc. or Clay Properties, Inc., in which appellant Clay was not personally a litigant. Appellee treated all of appellant Clay's companies as one client and testimony indicated that regardless of the named party in the particular litigation, Ozzie Clay "would pay through a multitude of corporations."

that this case is one of the small minority of cases that warrant the dismissal sanction." In so doing, the trial court ruled that appellants failed to satisfy the burden of proof to set aside the default judgment on three of the five factors.

First, the trial court found that the appellants did not act in good faith. The court determined that appellants willfully failed to produce the documents requested by appellee, and also that appellants' refusal to comply with two discovery orders was "utterly without cause." The trial court noted the insufficiency of appellants' pleadings. Also, appellants' claim that they could not obtain certain discovery documents was without just cause or explanation. The trial court further noted that appellants answers "fell far short of compliance and no further compliance followed either of the court orders in this case."

Judge Eilperin entered judgment in favor of appellee only after he acknowledged that he had discretion to do otherwise, and only after he considered less drastic sanctions such as attorneys' fees and costs. *Hinkle v. Sam Blanken & Co.*, 507 A.2d 1046, 1047, 1049 (D.C.1986). As this court has previously recognized, "willfulness alone, even without a showing of prejudice to the opposing party, can warrant dismissal, particularly where, as here, there has been an order compelling discovery." *Id.* at 1050 (citing *Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984)). In finding appellants' failure to comply with appellee's discovery requests and two prior court orders as "inexcusable," the trial court properly concluded that appellants did not act in good faith and that such conduct constituted severe circumstances warranting a default judgment against appellants. *Id.* at 1049.

■ Despite their assertion otherwise, the appellants failed to present a prima facie adequate basis for the counterclaim. In order for appellants to prevail on their counterclaim, they must produce expert testimony indicating that the appellee's rep-

resentation was below the standard of care of a lawyer in appellee's position. *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982) (plaintiff must present expert testimony in legal malpractice action to establish the standard of care unless the attorney's lack of care is so obvious that the trier of fact can discern negligence as a matter of common knowledge). Appellants, in response to appellee's interrogatories, disclosed their intention not to call any expert witnesses for their legal malpractice claim. Nor did appellants address the merits of their case in moving to reinstate their counterclaim. Apparently, the appellants' believed that malpractice in this instance was so evident that expert testimony was unnecessary. The trial court found that there was "no factual basis for the assertion that a layman would be competent to judge, without an expert's help, whether [appellee] negligently handled [appellants'] legal affairs." [4]

The record also showed that appellants' answer contained general denials which failed to factually contest appellee's complaint. Further, appellants asserted that documents relating to finances and the interrelationship of the three defendants were located at a Virginia bank; however, appellants Clay, *et al.* later claimed that they could not find the pertinent documents at this location. Accordingly, appellants' counterclaim asserted no "more than a bald allegation" which failed to meet their obligation to state a prima facie adequate defense, and thus are not relieved of their Rule 60(b)(6) obligation. *Clark v. Moler*, 418 A.2d 1039, 1043 (D.C.1980).

The record indicated substantial prejudice to the appellee. Without the corporate and financial information requested, it would be difficult for the appellee to pursue its theory that the defendants were alter egos of each other, and thus were each responsible for paying appellee's legal fees. Further, appellants' failure to appear at the March 11, 1988 pretrial conference severely prejudiced appellee, who assertedly suffered from a potentially life-threaten-

---

**4.** Although not binding on the court's decision here, the D.C. Bar Counsel dismissed appellants' complaint against the appellee explaining that it was unable to find sufficient evidence of any violations, and thus defeated appellants' assertion that malpractice was obvious.

ing condition,[5] by delaying the trial, which was scheduled for April 4, 1988, to January 1989, as the first available date.

Appellants' noncompliance with two discovery orders compounded the prejudice to the appellee, and indicated a blatant disregard for the discovery process. That eighteen months had passed without compliance to appellee's discovery requests demonstrates appellants' willful conduct. While this court could "hold that the willfulness of appellants' conduct alone constituted 'severe circumstances' justifying the sanction of a default judgment, we observe that [additionally] appellee suffered prejudice due to appellants' failure to make discovery." *Hinkle, supra,* 507 A.2d at 1050.

■ Although the trial court did not question appellants' statements that they did not receive actual notice of the pre-trial conference, the court attributed the want of notice to mishandling of the mail in counsel's office. A court is not required to grant a 60(b)(6) motion when circumstances indicate that the movant did not receive actual notice due to his own negligence. *Union Storage Co. v. Knight, supra,* 400 A.2d at 319.

Despite appellants' claims that it did not receive actual notice and that newly discovered information suggested fraud on the part of appellee,[6] we conclude that the trial court fairly exercised its discretion and considered alternatives to the ultimate sanction of dismissal. *Hinkle, supra,* 507 A.2d at 1049. Appellants' flagrant violation of the discovery rules is clearly supported in the record as well as the absence of a prima facie defense to appellee's claim for legal fees. There is ample evidence in the record indicating that appellants' discovery violations prejudiced appellee and thus warranted the harsh remedy of a default judgment and dismissal of the counterclaim. *Id.*

The record also supports the award of damages granted to appellee at the *ex parte* hearing based on appellant Clay's personal guarantee of the bills for Clay and Company, Inc. and for Clay Properties, Inc. Further, the default judgment was granted to appellee against all three of the appellants, and thus the issue of proof of damages as to Clay and Company, Inc. alone is subsumed by the finality of the default judgment against all appellants jointly and severally. The record also indicates that appellants failed to introduce information that could not have been discovered earlier.

The trial court was within its discretion to enter the default judgment under the severe circumstances of this case.

*Affirmed.*

---

5. Appellee's physician opined in a letter written May 18, 1988, that appellee suffered a subarachnoid hemorrhage, "a potentially explosive lesion that could result in sudden death at any time."

6. Appellants claim that appellee misrepresented his review of the appellants' documents. Two

partners of the law firm where appellants' documents were located submitted affidavits stating that neither appellee nor appellee's counsel contacted or visited the firm to review appellants' documents.