Marian A. COX, Appellant,

v.

Leonard D. COX, Appellee.

No. 95–FM–420.

District of Columbia Court of Appeals.

Argued Oct. 1, 1997.

Decided Feb. 19, 1998.

Carl V. Angelis, Washington, DC, for appellant.

Mary Todd, Washington, DC, for appellee.

Before FARRELL, KING, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

Appellant Marian A. Cox filed a motion under Super. Ct. Dom. Rel. R. 60(b) (1997) to amend her divorce decree in order to secure for herself a share of certain pension rights owned by her former husband. She moved separately to enforce and modify the provision of her marital separation agreement relating to child support. The trial court denied both motions, the former on the grounds that it was untimely under Rule 60(b)(1) and that Mrs. Cox had not shown extraordinary circumstances sufficient to warrant relief under Rule 60(b)(6). Regarding the latter, the court ruled that it lacked "authority to change a Separation Agreement or any other kind of agreement." We sustain the trial court's order on the Rule 60(b) motion, but vacate and remand for further proceedings on the motion to enforce and modify child support.

## I.

Mr. and Mrs. Cox were married on August 12, 1978, and have three children from the marriage. The parties separated on November 24, 1990, and on May 14, 1993, executed a Voluntary Separation and Property Settlement Agreement (the "Separation Agreement"), which was intended to resolve all matters relating to the marriage. They appeared *pro se* before Commissioner Thomas J. Gaye who, on June 28, 1993, signed a decree granting the judgment for absolute divorce.[1] The decree stated that there were "no property rights to be adjudicated" and did not by its terms incorporate, merge, or ratify the Separation Agreement.

Paragraph 8 of the Separation Agreement provided that "Husband presently has pension plan benefits/rights through his employment with the United States Navy. Both parties agree [that] Wife shall exercise her right, title, and interest in military retirement pay or pension rights of Husband as provided by military regulations." The Separation Agreement did not state the specific percentage or dollar amount Mrs. Cox would receive through the pension benefits. Instead it stated that the pension would be divided in accordance with those military regulations.

At some point thereafter, Mrs. Cox apparently applied to the military to receive her share of Mr. Cox's pension benefits, but was informed that she could not collect the benefits because her divorce decree lacked a specific percentage or dollar amount by which the pension was to be divided. Although the military regulations referenced in the Separation Agreement allow for direct payment to a former spouse of up to 50% of pension benefits, this authorization is conditional in that the divorce decree, or a court-approved property settlement incident to the decree, must "specifically provide[ ] for the payment of an amount, expressed in dollars or as a percentage of disposable retired pay, from the disposable retired pay of a member to the spouse or former spouse of that member." 10 U.S.C. § 1408(a)(2)(C), (e)(1) (1997); 32 C.F.R. 63.3(e), 63.6(a)(1), 63.6(c)(8), 63.6(e)(1) (1997).

On August 1, 1994, Mrs. Cox filed a motion in Superior Court under Super. Ct. Dom. Rel. R. 60(b), asking the court to amend the divorce decree to reflect what she said was the parties' intent, namely for her to receive 30% of Mr. Cox's pension benefits. The trial court denied the motion after a hearing.

## II.

 In essence, Mrs. Cox's motion to amend the divorce decree asserted that the parties had mistakenly failed to specify in the decree what portion of Mr. Cox's retirement benefits she would receive.[2] On appeal, Mrs. Cox argues first that her motion should have

---

1. The decree was docketed on June 29, 1993.

2. Alternatively, the parties had failed to specify the percentage in the Separation Agreement and secure court approval of the agreement, as required by the military regulations.

been granted under Rule 60(b)(1), which provides relief from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect." She recognizes, however, that a Rule 60(b)(1) motion by its terms must be made "not more than 1 year after the judgment ... was entered or taken," and that her motion to amend was filed thirteen months after the entry of the divorce decree. To recapture the extra month, Mrs. Cox attempts to rely on D.C.Code § 16–920 (1997), which postpones the "effective" date of a divorce decree "until the time for noting an appeal shall have expired," i.e., thirty days after final judgment. See D.C.App. R. 4(a)(1).[3] Plainly, however, the "effective" date under § 16–920 cannot be the same as the date that triggers its computation, which is the date judgment was entered. Moreover, the two dates serve distinct purposes: the former preserves the status quo ante pending appeal; the latter—as the starting point for Rule 60(b)(1)'s clock—preserves the finality of trial court judgments that are not appealed. Mrs. Cox's endeavor to escape the one-year limitation thus fails.

■ Mrs. Cox further argues that the trial court should have amended the divorce decree under Rule 60(b)(6), which permits action by the court for "any other reason justifying relief from the operation of the judgment." We are sympathetic to this argument in light of her seemingly plain entitlement under the Separation Agreement to some percentage of her spouse's military pension.[4] But we cannot ignore the limitations on Rule 60(b)(6) relief.

It is well settled that the more lenient provisions of Rule 60(b)(6) may not be used to nullify the specific time limitations of Rule 60(b)(1) nor can 60(b)(6) include any

of the grounds for relief provided elsewhere in Rule 60(b). In short, subparts (b)(1) and (b)(6) are mutually exclusive. *Household Finance Corp. v. Frye*, 445 A.2d 991, 992 (D.C.1982) (citations and internal quotation marks omitted). The Coxes' failure to specify a percentage of pension benefits in the divorce decree can only reasonably be described as "mistake" or "excusable neglect," i.e., unawareness of what the military regulations required. As we stated in *Household Finance*,

It is not clear that ignorance of the law would be a ground for granting relief under any part of Rule 60(b). Nonetheless, if we assume that it is a cognizable claim, ignorance of the law would describe "mistake" or "excusable neglect," thereby bringing the claim within 60(b)(1).

*Id.* at 993.

■ Furthermore, we have stated that "Rule 60(b)(6) is not a *carte blanche* to cast adrift from fixed moorings and time limitations guided only by the necessarily variant consciences of different judges. Its scope is extremely meag[er]." *Clement v. District of Columbia Dep't of Human Servs.*, 629 A.2d 1215, 1219 (D.C.1993) (citations and internal quotation marks omitted). Rule 60(b)(6) allows relief only "in unusual and extraordinary situations justifying an exception to the overriding policy of finality, or where the judgment may work an extreme and undue hardship." *Id.* (citations omitted). A necessary condition to such relief is that "'circumstances beyond [the moving party's] control prevented timely action to protect its interests.'" *Id.* (quoting *United States v. Alpine Land & Reservoir*, 984 F.2d 1047, 1049 (9th Cir.1993)).[5] *Id.* At the divorce hearing, the Commissioner repeatedly pointed out to the

3. If an appeal is noted, the postponement continues until the date of the final disposition of the appeal. D.C.Code § 16–920.

4. As Mrs. Cox points out, Mr. Cox in his deposition appeared to concede that the amount due her was one-third of his benefits. In his brief, by contrast, Mr. Cox states that Mrs. Cox's claim "to any percentage of [his] pension is highly disputed," though without explaining why.

5. Illustrating this point is *In re Starr's Estate*, 443 A.2d 533 (D.C.1982), relied on by Mrs. Cox. There a real estate broker argued that she would

not have waived her commission on a contract if she had known that the practice of the probate court was to allow a commission in the situation presented there. She argued that the prevailing practice in the probate court was so obscure that her ignorance of it was not "mistake" under 60(b)(1) (hence subject to its one-year limitation). This court determined that if, indeed, the probate court procedure existed and was "so obscure that appellant's attorney reasonably could not have ascertained its existence, then appellant's motion comes within the context of Rule 60(b)(6)." *Id.* at 537.

Coxes that "[y]ou haven't got a lawyer, either one of you," and that the divorce decree was not giving Mrs. Cox "child support or alimony, anything like that." Mrs. Cox replied that a lawyer had "looked over the paperwork and so forth" for her,[6] and that "if there's a problem [with carrying out the terms] I'll come back." In these circumstances, although Mrs. Cox's unawareness of the steps necessary to secure her pension share may have caused her serious loss, we cannot say that the trial court abused its discretion, *Profitt v. Smith*, 513 A.2d 216, 217 (D.C.1986), in concluding that her situation was not "extraordinary" or her loss "extreme and undue" so as to warrant relief under Rule 60(b)(6).[7]

■ Finally, Mrs. Cox argues that if Rule 60(b) furnished her no vehicle for relief, the trial court nonetheless erred in not exercising the general equity jurisdiction of the Family Division, which Mrs. Cox views as enabling the court to interpret and enforce the parties' Separation Agreement even without amending the divorce decree. This argument was barely adverted to in the trial court and so could fairly be considered waived. *See Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) (footnotes omitted). ("Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate

distinctly the party's thesis, will normally be spurned on appeal"). Mrs. Cox's position below, as her attorney stated, was that "the only way to effectuate the provision of the parties' Separation Agreement with respect to the pension rights is by amending the judgment of absolute divorce."

■ Waiver aside, however, Mrs. Cox confuses the Family Division's ongoing authority to enforce a separation agreement merged in the divorce decree with the general equity jurisdiction of the Superior Court to order specific performance of a separation agreement, like any other contract, upon a claim that the agreement was breached. *Clay v. Faison*, 583 A.2d 1388, 1389–90 (D.C.1990). The Coxes' Separation Agreement was not merged, ratified, or incorporated in the divorce decree. Moreover, although Mr. Cox obligated himself in the agreement to take the steps necessary to secure Mrs. Cox's pension rights, Mrs. Cox neither alleged a breach of this duty nor sought specific performance of it.[8] Mrs. Cox's remedy, in short, lay with a suit for breach of contract which she did not file. Thus the cases she cites on appeal, in which the trial court had indisputable ongoing jurisdiction over the matter, offer her no support.[9]

### III.

■ The Coxes' Separation Agreement provided for child support in a fixed amount,

---

6. Mr. Cox likewise had enlisted the aid of a Navy lawyer to draft the Separation Agreement.

7. We observe, moreover, that a motion seeking relief under Rule 60(b)(6) must be filed within a reasonable time after judgment. *Tribble v. American Mut. Ins. Co.*, 277 A.2d 659, 661 (D.C.1971). Mrs. Cox stopped receiving voluntary pension payments from Mr. Cox two months after the divorce. She then waited almost a year to file her motion to amend, and offers no explanation why she could not have filed earlier.

8. The only provision of the Separation Agreement for which she sought "enforcement" was that relating to child support. *See* part III, *infra*.

9. For example, *Lewis v. Lewis*, 300 A.2d 720 (D.C.1973), concerned a settlement agreement "which had been ratified and approved by the decree of divorce." *Id.* at 721. Further, the parties' dispute was essentially over alimony, as to which the trial court retains express statutory jurisdiction to make future orders. D.C.Code

§ 16–914 (1997). Similarly, while the dispute in *Spencer v. Spencer*, 494 A.2d 1279 (D.C.1985), narrowly concerned a provision of the settlement agreement for the sale and occupancy of the marital home, the dispute directly affected the welfare of the parties' children. *Id.* at 1287. This court therefore modeled its analysis on the child custody/support test enunciated in *Cooper v. Cooper*, 472 A.2d 878 (D.C.1984), for determining whether changed circumstances are a defense to specific performance of a separation agreement. Applying this test to *Spencer*, the question was whether the sale of the marital home was unforeseen and would materially and adversely affect the best interests of the children. *Spencer*, 494 A.2d at 1287. As with alimony, the trial court's continuing jurisdiction over child custody and support is statutorily declared. D.C.Code §§ 16–914, –916.

Neither *Lewis* nor *Spencer* thus implies that the court which decreed the Coxes' divorce retained jurisdiction outside the bounds of Rule 60(b) to resolve what in essence was a property dispute arising from an independent agreement.

to be modified annually in accordance with the Consumer Price Index "for that geographical area in which the Wife resides." At the time the agreement was executed Mrs. Cox lived in the Dallas, Texas metropolitan area. On February 15, 1995, she filed a Motion for Enforcement and Modification of the Marital Separation Agreement. In it she alleged that Mr. Cox was in arrears on the child support obligation in the amount of $1,336.36, and further requested modification of the child support provision to incorporate the Maryland Child Support Guidelines, explaining that by its terms the Separation Agreement was to be "interpreted in accordance with and controlled by the laws of the State of Maryland," which permit modification of a child support agreement by the court if the best interests of the child so dictate.[10]

■ The trial court denied this motion as well, asserting that it had "no authority to change a Separation Agreement or any other kind of agreement." In this the court erred. District of Columbia law permits a court to modify the child support provision of a separation agreement "not merged into a divorce decree," even though "the authority to do so is limited." *Swift v. Swift,* 566 A.2d 1045, 1047 (D.C.1989); *see Cooper, supra.*[11] Moreover, assuming—as Mrs. Cox contended— that Maryland law governs this issue, it too permits modification of a child support provision of an agreement "if the modification would be in the best interests of the child." Md.Code Ann., Fam. Law § 8–103(a) (1991). Thus, there is no question that the trial court had at least conditional authority to modify the Coxes' Separation Agreement as it pertained to child support. On remand the court must reconsider the child support issue, including both the request for modification and the claim of arrearage.

■ Mr. Cox argues that the issue is moot (or res judicata) because Mrs. Cox has already received a substantial part of the

requested increase in child support through her concurrent suit for modification filed in Prince Georges County, Maryland. As Mrs. Cox points out, however, at least a portion of the time period for which she seeks added support apparently is not embraced by the Maryland order. The trial court must also consider, pursuant to the Separation Agreement and statutory law, Mrs. Cox's entitlement to attorney's fees and costs in connection with her motion to enforce and modify the child support provision. *See* D.C.Code § 16–911(a)(1).[12] Finally, Mr. Cox's claim that the motion is presently barred by his pending case in Bankruptcy Court has no merit; that court has vacated its stay so that the present action may proceed, and Mr. Cox's appeals from that ruling have been denied.

### IV.

Accordingly, we sustain the denial of Mrs. Cox's motion to modify the divorce decree under Rule 60(b). We vacate the denial of her motion to enforce and modify the child support provision of the Separation Agreement, and remand for further proceedings on that motion.

*So ordered.*

---

10. Mrs. Cox also asked for attorney's fees and court costs associated with the motion.

11. "Such modifications require a showing that a substantial and material change in circumstances unforeseen at the time the agreement was signed

has occurred." *Swift,* 566 A.2d at 1047. *See Cooper,* 472 A.2d at 880.

12. In addition, the trial court must deal with Mr. Cox's claim of lack of personal jurisdiction, which it pretermitted earlier.