Norton F. TENNILLE, Jr., Appellant,

v.

Cheryl L. TENNILLE, Appellee.

Nos. 99–CV–1001, 00–CV–924.

District of Columbia Court of Appeals.

Argued Sept. 5, 2001.
Decided Feb. 14, 2002.

---

Jonathan M. Dana with whom Alane A. Peragallo, Falls Church, VA, was on the brief, for appellant. Garrett L. Lee and Alice J. Gallin–Dwyer, New York, NY, also entered appearances for appellant.

Allie J. Sheffield for appellee. Anne Meister, Washington, also entered an appearance for appellee.

Before SCHWELB and REID, Associate Judges, and NEBEKER, Senior Judge.

. NEBEKER, Senior Judge.

These appeals present the tension between a calculated refusal to respond to a complaint and summons and the preference by this and other courts for adjudication on the merits. Appellant, Norton F. Tennille, Jr., appeals from the entry of default judgment on a breach of contract action where he agreed to pay his former wife a fixed percent of his income in lieu of alimony. He also appeals the denial of a motion for relief from that judgment pursuant to Super. Ct. Civ. R. 60(b)(6). Mr. Tennille deliberately ignored the complaint after proper service on him and also ignored discovery requests. He argues that the trial court abused its discretion in its consideration of the factors under Rule 60(b)(6), specifically, that he has a meritorious defense, and that appellee, Cheryl L. Tennille will not be prejudiced by a trial on the merits. Mr. Tennille also argues that his income was inappropriately imputed to him since the pleadings did not provide adequate notice that the award would be based on the extrapolation of past gross income. As to this last argument, we note that it was not presented with any degree of precision in the Rule 60(b)(6) motion and only mentioned briefly during the hearing on the motion. The two appeals are consolidated, but the only issue is whether the denial of relief from judgment was an abuse of discretion. We affirm.

## I.

Norton F. Tennille and Cheryl L. Tennille were married in 1966. The couple had three children. The parties separated in August 1989, and entered into a Voluntary Separation and Marital Agreement ("Agreement") dated February 24, 1992, which was ultimately incorporated into a judgment for divorce on March 2, 1992.

Sections 5 and 6 of the Agreement provided that beginning on January 1, 1993, appellant was obligated to pay twenty-five percent of his gross income as defined by the Agreement. The parties defined gross income, *inter alia*, as "compensation for personal and professional services, whether by salary, commission or otherwise."

In December 1993, Mr. Tennille was asked to leave his position as an environmental lawyer and partner with his former law firm. In 1994, Mr. Tennille moved to South Africa to work as the president, executive director, and treasurer of a non-profit entity he established in conjunction with several colleagues. In September 1997, Mrs. Tennille commenced her breach of contract action for failure to provide spousal support.

The complaint alleged, *inter alia*, that Mr. Tennille agreed "to pay as spousal support twenty five per cent of his gross income to [Mrs. Tennille] commencing January 1, 1993," and that he breached the terms of the Agreement for his failure to pay her one quarter of the $189,476.79 received as final distributions from his former law firm. Mrs. Tennille also sought "one quarter share of all gross income earned by the [appellant], as defined by and in accordance with the terms of the Agreement, during the three year period immediately preceding the filing of this Complaint, including but not limited to the sum of $31,964.20 plus interest for [appellant's] breach of his contract with regard to his payments from his [former law firm] made on September 30, 1994, in compensation for the loss she suffered as a result of [appellant's] breach of contract." Mrs.

Tennille further alleged that "[a]t the time of his employment with [his former law firm], [Mr. Tennille] was earning in excess of Three Hundred Thousand Dollars ($300,000) per year in his practice as an attorney," and that "[s]ince the fall of 1994, [he] has been residing in South Africa and professionally associated with [a nonprofit organization]." Mrs. Tennille stated that it was her belief that her former husband "has received income, as defined by the Agreement, from this employment and from other sources." Mrs. Tennille also sought "reasonable attorney's fees and costs incurred in this action" in accordance with Section 20 of the Agreement that allows for such liability by either party who breaches or defaults.

Mr. Tennille was properly served with the summons and complaint on April 6, 1998, in South Africa. No answer to the complaint or responses to the subsequent requests for discovery were forthcoming. Indeed, the record reflects a deliberate choice to ignore the matter. On July 10, 1998, a default was entered against the appellant, subject to *ex parte* proof. On March 19, 1999, the trial court held a damages hearing on the complaint for breach of contract after notice to Mr. Tennille. Mr. Tennille failed to appear. We need not decide here whether Mr. Tennille's failure to appear after proper and timely notice at the post-default damages hearing precludes him from raising the arguments he presents, for in any event they fail.

During the *ex parte* hearing, the trial court found that Mr. Tennille breached the Agreement, and that based on the evidence presented had failed to pay his former wife the sum of $31,964.20 from his final distributions received from his former law firm, in accordance with the Agreement.[1] With no appearance by Mr. Tennille, the trial court allowed Mrs. Tennille to qualify a vocational expert to establish Mr. Tennille's "wage earning capacity as a proxy in establishing [his] monetary obligation" to Mrs. Tennille from October 1994 to October 1997. The trial court credited the vocational expert's testimony that based on Mr. Tennille's education, work experience and past earnings, and with reference to research in the field, his wage earning capacity for the relevant period was, at a minimum, $1,820,000.00.[2] The trial court awarded twenty-five percent of the established wage earning capacity or $455,000.00, plus interest at the statutory rate from the time of the filing of the complaint, as spousal support due in accordance with Section 5 of the Agreement. The trial court also found that Mr. Tennille breached the terms of the Agreement, and in accordance with Section 20, ordered him to pay his former wife's legal fees and costs of $3,772.00. A timely appeal from this order followed.

In determining whether the requested relief should be granted, the trial court applied the factors set forth in *Clay v. Deering*, 618 A.2d 92, 94 (D.C.1992), and found that the only factor that weighed in Mr. Tennille's favor was that he had presented an adequate prima facie defense to the allegations in the complaint. This factor alone was not deemed dispositive. The trial court also noted that Mr. Tennille failed to present any extraordinary circumstance justifying relief for his failure to provide a legitimate reason for not participating in the proceedings for more than one year.

---

1. Since *Mr. Tennille* concedes this obligation, and did not seek reconsideration by the trial court of that part of the judgment, we do not address it.

2. At the hearing, the vocational expert testified that Mr. Tennille's earning capacity was $580,000 for 94/95, $605,000 for 95/96 and $635,000 for 96/97.

## II.

▮ It is well established that the decision to set aside a default judgment is within the sound discretion of the trial judge, when the relevant factors are considered and weighed. *Dunn v. Profitt,* 408 A.2d 991, 992 (D.C.1979). In exercising its discretion, the judge must weigh the competing considerations of a strong policy favoring a trial on the merits and the important need for finality in litigation. *Id.* at 993. Each case is evaluated in light of its particular facts and whether the moving party (1) had actual notice of the proceeding, (2) acted in good faith, (3) presented a prima facie adequate defense, and (4) acted promptly upon discovery of the judgment. *Clay, supra,* 618 A.2d at 94. Prejudice to the non-moving party should also be considered. *Id.*

▮ Super. Ct. Civ. R. 60(b) allows for relief from a judgment "[o]n motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." The purpose of 60(b) is to allow relief only "in unusual and extraordinary situations justifying an exception to the overriding policy of finality, or where the judgment may work an extreme and undue hardship...." *Clement v. Dep't of Human Servs.,* 629 A.2d 1215, 1219 (D.C.1993) (citations omitted). Moreover, a necessary prerequisite to relief under Rule 60(b)(6) is that "circumstances beyond the [moving party's] control prevented timely action to protect its interests." *Cox v. Cox,* 707 A.2d 1297, 1299 (D.C.1998) (internal quotations and citations omitted).

▮ Mr. Tennille contends that the trial court abused its discretion by summarily dismissing "the significant factors weighing in Mr. Tennille's favor in its balancing process," that he had a meritorious defense and the lack of prejudice to his former wife. The order denying Mr. Tennille's motion provided a detailed account of the trial court's findings as to each of factors in *Clay, supra,* 618 A.2d at 94, and attendant to that determination was the extent to which Mr. Tennille's dilatory behavior was willful. The trial court's findings were based upon Mr. Tennille's statements and inferences drawn from his failure to participate in the court's process until July 28, 1999, despite having been personally served more than a year earlier.

Mr. Tennille argues that he did not owe spousal support because he earned no income for the period in question. This argument is contrary to the trial court's actual finding that a prima facie defense to the allegations in the complaint is a sufficient showing to satisfy his burden with respect to this factor. The trial court relied on *Clark v. Moler,* 418 A.2d 1039, 1043 (D.C.1980), and found that "the court is not now asked to evaluate whether the asserted defense is meritorious, but need only determine whether the [appellant] presented an adequate prima facie defense." We agree that the necessary showing need not be "as strong as that of likely to succeed," *id.* (internal quotations omitted), but instead, a sufficient elaboration of the facts is all that is required to permit the trial court to conclude whether the defense, if found to be true, is adequate. The trial court also noted that the fact Mr. Tennille presented an adequate defense "is not dispositive of whether the requested relief should be granted." In balancing the adequate defense factor with the four other *Clay* factors that weighed in Mrs. Tennille's favor, the trial court concluded that that single factor alone does not warrant the requested relief and that his intentional and willful decision not to participate in the court's proceedings fur-

ther demonstrated that the requested relief could not be granted. From this record, we cannot agree with Mr. Tennille's contention that the trial court summarily dismissed the single factor favorable to him. The trial court simply deemed this factor not to be controlling.

Mr. Tennille also contends that the trial court abused its discretion in evaluating the prejudice to his former wife. Specifically, "[t]he issue is not whether Mrs. Tennille would suffer if the unfair and unrealistic award of support was vacated," but that the proper inquiry "is whether Mrs. Tennille would be prejudiced in her ability to litigate the case on the merits, and she would not be prejudiced." The trial court found that Mrs. Tennille would indeed be prejudiced because "[t]he instant case has been pending for over three years at this point," with Mr. Tennille having had notice from personal service since April 1998. In addition, the trial court noted that the long delay in this matter has deprived Mrs. Tennille "of the spousal support that she was entitled to under the clear terms of the agreement." The trial court explained that "[i]t is hard for this court to now conclude anything but that [Mrs. Tennille] has been and will continue to be prejudiced if this matter is delayed any longer by granting [Mr. Tennille] the requested relief."

Relying on *Union Storage Co. v. Knight*, 400 A.2d 316, 319 (D.C.1979), Mr. Tennille contends that the proper question is whether Mrs. Tennille would be prejudiced in her ability to litigate the case on the merits, since her rights are protected by the Agreement and no other witnesses are required. But, in *Union Storage*, a case arising out of a destruction of property claim, we held that the trial court fairly considered all the relevant facts in exercising its discretion where the failure to receive notice was attributed to movant's own negligence and that the plaintiff would be prejudiced by a trial if the default judgment were set aside where "the events at issue occurred ten years ago—memories have faded and documents have been lost." *Id.* at 319. But prejudice in this context is not limited to loss of proof.

Mr. Tennille also claims that there is no showing that Mrs. Tennille will be prejudiced by a trial on the merits because of her own delay in waiting three years before initiating an action under the Agreement and if the default is vacated and she prevails, she will receive the spousal support due to her plus interest. He relies on *Jones v. Hunt*, 298 A.2d 220 (D.C.1972), in support of his contention that Mrs. Tennille has not shown how her claim will be prejudiced by a trial on the merits and in the absence of such showing, it will be presumed that she will be able to prove her case at any time. In *Hunt*, however, there was no showing that the movant received notice of the suit, nor did the record indicate that the movant acted in bad faith to avoid the process of the trial court. *Id.* at 222. In the instant case, the trial court concluded that any further delay would constitute prejudice to Mrs. Tennille given that the case had been pending for more than three years, and the fact that Mr. Tennille deliberately chose not to participate in the proceedings.

Mr. Tennille's position seems to be that since he had no income during the crucial period he would prevail under the terms of the contract. Be that as it may, Mr. Tennille had that ability to present that issue if he had answered the complaint. Instead, his deliberate inaction produced prejudice to Mrs. Tennille both as to time with no income to her and the cost of presenting the only evidence left to her to vindicate her rights. Moreover, prejudice inured to her since any effort to refute the "no income" claim would require belated

discovery of records, if any, which he once refused to disclose from the South Africa venture. Indeed, his "no income" claim would appear inherently incredible for he did not claim to live as a pauper in South Africa.

■ Mr. Tennille urges that it was an abuse of discretion when the trial court denied his motion, given the prejudice to him from the large judgment and the strong policy favoring a trial on the merits. In support of his argument, Mr. Tennille relies on *Clement, supra,* that the policy favoring the finality of judgments "may give way where countervailing considerations prevail...." 629 A.2d at 1218. We do not read our decision in *Clement* as one that justifies relief from an adverse Rule 60(b)(6) motion where the facts show that Mr. Tennille's failure to participate in the court's processes was not beyond his control. To be sure, relief under Rule 60(b)(6) may be appropriate "where the judgment may work an extreme and undue hardship," *id.* at 1219, but such relief will not be justified "unless movant shows 'both injury and that circumstances beyond its control prevented timely action to protect its interests.'" *Id.* (quoting *United States v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir.), *cert. denied,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 29 (1993)).

Mr. Tennille relies on *Panici v. Rodriguez,* 689 A.2d 557 (D.C.1997), to support his contention that this matter should be adjudicated on the merits given the extreme hardship he will suffer due to the significant judgment against him. To the contrary, in *Panici* the trial court, *sua sponte,* dismissed the case after both parties failed to appear at the initial scheduling conference and there was no record of the trial court's order dismissing for want of prosecution. *Id.* at 558. When Mr. Panici learned of the dismissal, he filed a Rule 60(b) motion which was summarily denied without prejudice by the trial court for his failure to provide sufficient infor-

mation to determine whether a hearing was required. *Id.* We reversed for abuse of discretion for the trial court's failure to consider the factors in *Reid v. District of Columbia,* 634 A.2d 423, 424 (D.C.1993), and because Mr. Panici never received the required notice of the dismissal of his case, and he "explained why he did not appear at the initial scheduling conference, and acted promptly when he discovered the dismissal...." *Panici, supra,* 689 A.2d at 560. Moreover, there was no "indication in the record that the trial court determined, ... that Mr. Panici's failure to appear was an act of willful and deliberate delay and that appellees were prejudiced by [Mr. Panici's] delay." *Id.* at 559 (internal quotations omitted). In contrast, the present case is one where the trial court applied the factors in *Clay* and found that Mr. Tennille "intentionally and willfully" failed to participate and respond to the complaint.

By Mr. Tennille's "free, calculated and deliberate choice," *Blacker v. Rod,* 87 A.2d 634, 636 (D.C.1952), he failed to answer the complaint, considering the suit in his own words, as "vexatious." He cannot now be heard to claim that the default judgment justifies vacatur. *Id.* (holding that where a movant made a deliberate choice not to answer the complaint, after the entry of a default, he cannot later complain about the judgment). It was incumbent upon Mr. Tennille to advance any meritorious defense in the trial court. Instead, as an attorney, he willfully disregarded the court's processes, and we have held that even a "client, not the adversary or the court, must bear responsibility for retaining counsel who failed to understand the rules of [the] court." *Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515, 520 (D.C.1985).

## III.

■ Mr. Tennille contends that he did not have adequate notice from the plead-

ings that income would be imputed to him as a law firm partner in Washington, D.C. Mr. Tennille did not raise this issue in his Rule 60(b)(6) motion and barely adverted to it during the hearing on October 29, 1999, thus it could be fairly considered waived. *See Cox, supra,* 707 A.2d at 1300 (citing *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) ("Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal")). In any event, the extrapolation of his income is a problem to him of his own making. The trial court was well within its discretion in not heeding his call to now protect him from himself.

*Affirmed.*

SCHWELB, Associate Judge, concurring:

This case is somewhat troubling, for Mr. Tennille may have to pay a large amount of spousal support calculated on the basis of his hypothetical income rather than on his real financial condition. As the court points out, however, this problem is one entirely of Mr. Tennille's own making, and his refusal to respond to discovery or to participate in the lawsuit left Mrs. Tennille little choice but to build her case as best she could. It is too late now for Mr. Tennille to cry foul, and I join the opinion of the court.